**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTINE POWELL, individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>     v. <br><br> SUBARU OF AMERICA, INC. <br><br>     Defendant. | Civil Action No._____ <br><br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

    The allegations contained in this Complaint are based on Plaintiff's personal knowledge as to Plaintiff's own conduct and on information and belief as to all other matters based on an investigation by Plaintiff's Counsel:

**I.**     **STATEMENT OF THE CASE**

    1.    Plaintiff Christine Powell brings this class action against Defendant Subaru of America, Inc. ("Subaru" or "Defendant") because Defendant is manufacturing, marketing and selling new vehicles with defective and dangerous windshields that are spontaneously and/or unreasonably cracking, chipping and otherwise breaking (the "defect"). Further, replacement windshields provided by Defendant and paid for by Plaintiff and the Class suffer from the same defect and therefore are equally defective and dangerous.

    2.    Plaintiff demands that Defendant accept responsibility for replacing damaged windshields under its new vehicle warranty at no charge to Plaintiff and the Class (as defined below) and reimburse Plaintiff and the Class for losses suffered as a result of the defect and/or that Subaru be required to buyback the Class Vehicles.

3.          Plaintiff brings her claims individually and on behalf of all persons or entities in the United States and/or Wisconsin who own or lease a 2017-2019 Subaru Forester or 2017-2019 Subaru Outback (the "Class Vehicles"), as well as those who owned or leased a Class Vehicle and suffered losses as a result of the defect during their period they possessed the vehicle.

4.          Upon information and belief, the Class Vehicles all contain the same type of windshields. The Class Vehicles pose an imminent and significant safety hazard to vehicle operators and the public and are causing Class members to incur substantial monetary losses and other damages.

5.          Upon information and belief, Defendant has been on notice of this defect in the Class Vehicles for years but has concealed its knowledge from the public and continues to deny the existence of the defect.

6.          Complaints of the defect are widespread and have been brought to the Defendant's attention but Defendant is forcing consumers to bear the costs and expenses associated with the defect.

7.          Among the dangers and damages associated with the defective windshields is that fact that cracks in the windshield prevent the safe and proper operation of Subaru's "EyeSight® Driver Assist Technology".  According to Subaru, the Eyesight system:

> [I]s the culmination of everything Subaru engineers know about safety, and Subaru has sold over 1 million EyeSight-equipped vehicles. Adding confidence to every trip, EyeSight monitors traffic movement, optimizes cruise control, and warns you if you sway outside your lane. EyeSight has been found to reduce the rate of rear-end crashes with injuries by up to 85%.

8.          When the broken windshields in the Class Vehicles are replaced, vehicle owners incur substantial additional expense beyond the cost of replacing the

windshield to have the Eyesight system recalibrated.

9.      In addition to having their personal safety and that of the public put at risk, owners of Class Vehicles are incurring substantial monetary losses because Defendant refuses to replace the broken windshields under warranty or to reimburse consumers for the broken windshields and other losses resulting from the defect.

10.     Plaintiff and numerous putative class members have complained to Defendant but Defendant has refused to accept liability, thereby necessitating the filing of this class action.

11.     Plaintiff and Class members assert claims for breach of express warranty, breach of implied warranty, fraud, breach of the consumer protection statute and unjust enrichment.

12.     As a direct result of Defendant's business practices and wrongful conduct, Plaintiff and the Class have been harmed and have suffered actual damages, including repair and replacement costs, loss of use of their Class Vehicles, loss of the benefit of their bargain, and costs and lost time associated with the defect and bringing in their Class Vehicles for diagnosis and repair.

## II.    JURISDICTION AND VENUE

13.     This Court has original diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"), in that Plaintiff and many members of the Class are citizens of states different from Defendant's home state, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members in the proposed Class and Classes.

14.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant because Subaru conducts substantial business in this District; Subaru has its

headquarters in this District; upon information and belief, significant conduct involving Defendant giving rise to the Complaint took place in this District; and some of Plaintiff's claims arise out of Defendant operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, committing a tortious act in this state, and causing injury to property in this state; and at or about the time of such injuries, Defendant was engaged in solicitation or service activities within this state, or products, materials, or things processed, serviced, or manufactured by Defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, Defendant regularly conducts business in this District, and Defendant is a resident of this District under 28 U.S.C. § 1391(c)(2) and subject to personal jurisdiction in this District.

## III.   PARTIES

16.     Plaintiff Christine Powell is a citizen and resident of the state of Wisconsin.

17.     Defendant Subaru is a New Jersey corporation with headquarters in Camden, New Jersey.  Subaru is the automobile manufacturing division of the Japanese conglomerate Subaru Corporation.

18.     Subaru has a nationwide dealership network and operates offices and facilities throughout the United States.

19.     Subaru manufactured, marketed and sold the Class Vehicles, including Plaintiff's vehicle.

## IV.   __FACTS__

20.      On or around August 19, 2017, Plaintiff purchased a new 2018 Subaru Forester ("Plaintiff's vehicle") from Don Miller Subaru in Madison, Wisconsin for personal, family, or household purposes.

21.      Plaintiff continues to own her Class Vehicle. When Plaintiff purchased her Class Vehicle, she was unaware that the vehicle contained a defective windshield.

22.      Within a few months of purchasing the Class Vehicle, Plaintiff's windshield suddenly cracked.

23.      As a result of the broken windshield, on or about December 22, 2017, Plaintiff took her Class Vehicle to Don Miller Subaru, an authorized Subaru dealer. Defendant's authorized dealer examined the windshield, denied that it was Subaru's responsibility, and replaced the windshield at the expense of Plaintiff and her insurer.

24.      At the time the windshield was replaced the mileage on Plaintiff's Class Vehicle was 3,502.

25.      Plaintiff was advised by Don Miller Subaru that Subaru was not replacing broken windshields under the new vehicle warranty that comes with the Class Vehicles.

26.      Unfortunately, the replacement windshields supplied by Subaru suffer from the same defect as the original windshields installed in the Class Vehicles.

27.      In or around May 2019, Plaintiff's vehicle suffered another break in the windshield. At the time, her vehicle had approximately 15,000 miles. Because Plaintiff resides several hours from the nearest Subaru dealer, Plaintiff hesitates to incur additional monetary losses and other damages, including substantial loss of use of her vehicle, to replace the windshield with yet another that will suffer from the same defect. Plaintiff's vehicle is still within the warranty mileage and time limits.

28.     When Plaintiff and Class members purchased or leased their Class Vehicles, they relied on the reasonable expectation that the Class Vehicles would be equipped with windshields that are free from defects, safe to operate, and do not pose a threat to their health or safety. In fact, Defendant has always emphasized the quality and reliability of the Class Vehicles, knowing that consumers, including Plaintiff and Class members, rely upon such representations when purchasing or leasing vehicles.

29.     When Plaintiff and Class members replaced windshields in their Class Vehicles after breaks and other physical damage occurred, they reasonably expected that the replacement windshields would be free of defects and otherwise safe and merchantable.

30.     Plaintiff and the Class members operated their Class Vehicles in a reasonably foreseeable manner and as the Class Vehicles were intended to be used but nevertheless suffered significant damages to their windshields as a result of the defect.

31.     Plaintiff and the Class members have suffered ascertainable losses as a result of Defendant's breach of express and implied warranties, fraud, and breach of consumer protection statutes.

32.     At all relevant times, Defendant acted through its authorized agents and representatives in its dealer network while performing activities associated with advertising, marketing, selling, and replacing broken windshields in Class Vehicles.

33.     At all times relevant to this action, Defendant manufactured, distributed, sold, leased, and warranted the Class Vehicles under the Subaru brand name.

34.     Defendant has known for years of defects in the windshields of earlier model Subaru vehicles and Defendant is aware of a tremendous volume of complaints of this defect in the windshields of the Class Vehicles.  Examples of some of the

hundreds of complaints, including consumers' concerns for safety, that are now public concerning the windshields in the Class Vehicles include the following:





HTSA ID Number: 11217802

Incident Date May 1, 2019

Consumer Location BEULAH, CO

Vehicle Identification Number JF2SKAGC4KH****

### Summary of Complaint

| | | |
|---|---|---|
| ASH | No | WINDSHIELD SHATTERED WITHIN 6 MONTHS OF PURCHASE DURING A DRIVE ON A COUNTY MAINTAINED DIRT ROAD GOING 30MPH. RECEIVED FIRST CHIP AFTER 3 DAYS OF USE ON AN INTERSTATE GOING 65MPH. AFTER LOOKING INTO COST FOR REPAIRS DISCOVERED THIS IS A KNOWN PROBLEM WITH RECENT SUBARU VEHICLES INCLUDING A LAW SUIT IN CANADA AGAINST THE OUTBACK MODEL VEHICLES FOR SHATTERING GLASS. I HAVE NEVER HAD TO REPLACE A WINDSHIELD ON A VEHICLE BEFORE AND NOW MUST DO SO WITHIN 6 MONTHS OF PURCHASING A BRAND NEW VEHICLE. THIS IS A SERIOUS SAFETY CONCERN, IF THE WINDSHIELDS ARE THIS THIN IT WILL NOT TAKE MUCH FORCE TO HAVE OBJECTS COME FLYING THROUGH THE WINDSHIELD. |
| E | No | |
| URIES | 0 | |
| ATHS | 0 | |

**Affected Product** ▾

July 5, 2019 NHTSA ID NUMBER: 11229689
### Components: VISIBILITY/WIPER



NHTSA ID Number: 11229689

Incident Date June 10, 2019

Consumer Location ROCHESTER, MA

Vehicle Identification Number N/A

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | JUST EXPERIENCED MY SECOND SPONTANEOUS CRACK WITHIN FOUR SIX MONTHS WHERE THE WINDSHIELD NEEDED TO BE REPLACED ON MY 2019 SUBARU OUTBACK. THE CRACK STARTS AT THE BOTTOM OF THE WINDSHIELD BELOW THE WIPER BLADES AND THE CRACK EXPANDS UPWARD APPROXIMATELY 12-18 INCHES. IT IS BEYOND MESHY THESE WINDSHIELDS HAVE TO BE REPLACED SO OFTEN AND IT IS MY OPINION THEY ARE MADE WITH MATERIALS THAT CANNOT STAND UP TO DAY TO DAY TEMPERATURE CHANGES OF NEW ENGLAND. THE CAR WAS PARKED ALL WEEKEND AND HAD NO CRACK. HOWEVER, ON MONDAY MORNING, THE CRACK WAS THERE. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

Components: VISIBILITY/WIPER

**NHTSA ID Number:** 11254646

**Incident Date** September 5, 2019

**Consumer Location** WILLISTON, VT

**Vehicle Identification Number** JF2SKAPC8KH****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WHEN I PARKED MY CAR AT MY WORKPLACE THERE WAS NO VISIBLE DAMAGE TO THE WINDSHIELD AND WHEN I RETURNED AFTERWARDS, THERE WAS A LARGE CRACK, OVER A FOOT LONG COMING FROM THE TOP OF THE DRIVER'S SIDE. UPON INSPECTION, THERE IS AN EXTREMELY TINY POINT OF IMPACT FROM A TINY PEBBLE. THE WINDSHIELD IS SO FRAGILE. I SUSPECT THEY USE THINNER GLASS TO ALLOW EYESIGHT TO FUNCTION PROPERLY. I'VE HEARD OF PEOPLE NEEDING TO REPLACE WINDSHIELDS WITHIN WEEKS OF EACH OTHER. IT'S CONCERNING WHEN SUBARU MARKETS THESE VEHICLES TO BE CAPABLE OF HANDLING ALL WEATHER CONDITIONS WHEN THE WINDSHIELD IS NOT EVEN STRONG ENOUGH TO WITHSTAND A TINY PEBBLE. I DRIVE THE SPEED LIMITS, NEVER TAILGATE, AND I NEVER HAD THIS PROBLEM ON ANY OTHER VEHICLES I'VE OWNED. I'M TRULY DISAPPOINTED THAT I WILL HAVE TO REPLACE MY WINDSHIELD AND HAVE EYESIGHT RECALIBRATED, WHICH WILL BE VERY COSTLY, WITH LESS THAN 4,000 MILES ON THE ODOMETER. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

August 27, 2019 NHTSA ID NUMBER: 11246594

Components: VISIBILITY/WIPER

NHTSA ID Number: 11246594

Incident Date August 26, 2019

Consumer Location SALT LAKE CITY, UT

Vehicle Identification Number JF2SKAUC4KH****

Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | WINDSHIELD DEFECT. IT JUST CRACKED BY ITSELF WITHOUT ANY OUTSIDE FORCE. THE CRACK STARTED AT THE BOTTOM OF THE WINDSHIELD. THE VEHICLE WAS NOT AT MOTION. IT WAS AFTER BEING PARKED. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

August 25, 2019 NHTSA ID NUMBER: 11246529

## Components: VISIBILITY/WIPER

**NHTSA ID Number:** 11246529

**Incident Date** August 25, 2019

**Consumer Location** SAN JOSE, CA

**Vehicle Identification Number** JF2SKAEC2KH****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

A SPONTANEOUS 20-25IN WINDSHIELD CRACK HAS APPEARED OVERNIGHT WHILE MY 2019 SUBARU FORESTER WAS PARKED IN A COVERED PARKING SPOT AT MY HOME ON 8/25/2019. I WAS SURPRISED TO SEE THIS IN THE MORNING ON SUNDAY AS THERE WAS NO CRACK ON SATURDAY AND THE CAR WAS JUST SITTING THERE OVERNIGHT.

SEEMS LIKE THE CRACK STARTED BELOW THE DRIVER'S WINDOW WIPER (WHERE THE WIPER HEATING ELEMENT IS LOCATED) AND DEVELOPED A C-SHAPE CRACK UP AND TO THE LEFT TOWARDS THE DRIVER'S VIEW SIDE. NO SIGNS OF CHIPS OR DENTS ON THE WINDSHIELD, IT HAS CRACKED FOR NO OBVIOUS REASON. PLEASE SEE PICTURES ATTACHED.

I HAVE GOOGLED THIS ISSUE AND IT SEEMS THAT THERE WERE A LOT OF SIMILAR COMPLAINTS ABOUT OUTBACK AND FORESTER IN THE PAST. IT WOULD BE NICE IF SUBARU ACKNOWLEDGED AND FIXED THIS ISSUE.

THANK YOU FOR YOUR HELP!

**NHTSA ID Number:** 11244781

**Incident Date** August 16, 2019

**Consumer Location** WARNER ROBINS, GA

**Vehicle Identification Number** JF2SKAKC6KH****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

08/16/19 I WAS DRIVING DOWN THE INTERSTATE AT 70MPH, I HEARD A VERY FAINT "TINK" AND SAW A 1 INCH CRACK ON THE LOWER PASSENGER SIDE NEAR THE OUTER EDGE. I DID NOT SEE A ROCK AND IT DEFINITELY WAS NOT A LOUD SOUND LIKE A NORMAL ROCK CHIP WOULD CREATE. MY INSURANCE SET UP AN APPOINTMENT AT 8:00 AM THE FOLLOWING MORNING 08/17/19 WITH SAFELITE TO REPAIR IT. AFTER BEING AT SAFELIGHT FOR ONLY 5 MINUTES THE TECH COMES OUT TO TELL ME THE WINDSHIELD SPLIT AND NOW I HAVE A 19 INCH CRACK ACROSS MY WINDSHIELD AND IT MUST BE REPLACED AND THE CAMERAS RECALIBRATED THROUGH SUBARU. I NOW HAVE TO DRIVE MY 1 MONTH OLD SUBARU FORESTER SPORT WITH A CRACKED WINDSHIELD UNTIL MY SUBARU DEALER CAN GET ME A NEW WINDSHIELD AND REPAIR DATE. I'VE OWNED HONDA, TOYOTA , SCION, CHEVY, GMC, ACURA, LEXUS AND FORD AND HAVE NEVER HAD A WINDSHIELD CRACK OR SPLIT. THIS SEEMS TO BE WAY TOO COMMON WITH THESE SUBARU WINDSHIELDS.

**Affected Product ▾**

August 12, 2019 NHTSA ID NUMBER: 11243300



**Components: VISIBILITY/WIPER**

**NHTSA ID Number:** 11243300

**Incident Date** August 10, 2019

**Consumer Location** LONG BEACH, CA

**Vehicle Identification Number** JF2SKAGC0KH****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

HUSBAND WAS DRIVING HOME AFTER GRAVEYARD WORK SHIFT, WITH NO OTHER CARS ON THE HIGHWAY, WHEN HE HEARD A CRACK. HE NOTICED A CRACK COMING FROM UNDER THE WINDSHIELD WIPERS IN THE MIDDLE OF THE FRONT WINDSHIELD, CLOSER TO THE DRIVER SIDE. HE DID HAVE THE DEFROSTER ON. THE NEXT DAY THE CRACK HAD SPREAD AND 2 MORE CRACKS APPEARED ON THE WINDSHIELD. WE CALLED THE DEALER AND NOTIFIED THEM AND THEY SAID WARRANTY DOES NOT COVER THAT SINCE WE DIDN'T PURCHASE ADDITIONAL WARRANTY, AND IT IS NOT A FACTORY DEFECT THAT THEY ARE AWARE OF. IT IS A NEW 2019 SUBARU FORESTER.

1 Affected Product ▾

☐ **Request Research** (Services fees apply)

## Components: VISIBILITY/WIPER

**NHTSA ID Number:** 11243043

**Incident Date** August 10, 2019

**Consumer Location** GRAND JUNCTION, CO

**Vehicle Identification Number** JF2SKAGC3KH****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | I WAS DRIVING ON HIGHWAY AND DID NOT HEAR A ROCK OR ANY OBJECT HIT WINDSHIELD. WHEN I ARRIVED HOME I NOTICED A CRACK IN WINDSHIELD BEGINNING AT DEICER OF WINDSHIELD UP TO 25% UPWARDS FROM THE BOTTOM OF THE WINDSHIELD. THE WINDOW APPEARS TO BE BRITTLE AND SUBARU PREVIOUSLY HAD SAME ISSUE WITH 2016 OUTBACKS. SUBARU DENIED THIS WAS WITHIN WARRANTY. I PURCHASED THE CAR NEW 3-4 WEEKS AGO. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**Affected Product** ⌄

**Request Research** (Services fees apply)

## Components: VISIBILITY/WIPER

**NHTSA ID Number:** 11174431

**Incident Date** January 31, 2019

**Consumer Location** MONROE, NY

**Vehicle Identification Number** JF2SKAKCXKH****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | I AM HERE TO REPORT MY 2019 SUBARU FORRESTER WINDSHIELD CRACK. I THE CAR IS ONLY 1 MONTH OLD AND WE FOUND THE CRACK IN THE MORNING WHILE SITTING IN THE DRIVEWAY I HEARD THE SAME PROBLEM HAPPENS ON 2015 OUTBACK I CALLED THE SHOP AND THEY TOOK PICTURES AND THEY DID NOT FIND ANY CHIPS THAT WOULD INDICATE A ROCK OR PEBBLE HIT THE CAR AND SAID THEY WILL CALL SUBARU AND GET BACK TO ME |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

Affected Product

April 10, 2019  NHTSA ID NUMBER: 11195357

## Components: VISIBILITY/WIPER

**NHTSA ID Number:** 11195357

**Incident Date** March 8, 2019

**Consumer Location** WINDSOR, VA

**Vehicle Identification Number** JF2SKAGC1KH****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WHILE DRIVING A SLIGHT NOISE WAS HEARD FOLLOWED BY THE APPEARANCE OF A HORIZONTAL CRACK WHICH SPREAD TO APPROXIMATELY 15". VEHICLE WAS IN MOTION ON A US HIGHWAY. BOTH SAFELITE AND THE LOCAL SUBARU DEALER HAVE ADVISED THAT REPLACEMENT GLASS IS ON HOLD / NATIONAL BACKORDER. IT HAS BEEN BROKEN AND THERE IS NO ESTIMATE OF WHEN OR IF IT CAN BE REPAIRED. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**Affected Product** 

September 16, 2019  NHTSA ID NUMBER: 11255733

## Components: VISIBILITY/WIPER

**NHTSA ID Number:** 11255733

**Incident Date** September 14, 2019

**Consumer Location** LOUISVILLE, CO

**Vehicle Identification Number** JF2SKAEC3KH****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | THE WINDSHIELD SPONTANEOUSLY CRACKED ON THE PASSENGER SIDE. I WAS DRIVING STRAIGHT ABOUT 40MPH ON A HOT DAY MID-SEPTEMBER WITH THE A/C GOING. THERE WAS A SUDDEN "POP" AND I NOTICED A CURVED CRACK HAD INSTANTLY APPEARED ON THE PASSENGER SIDE. THERE WERE NO CARS NEAR ME. LOOKING AT THE WINDSHIELD, I DIDN'T SEE AN OBVIOUS IMPACT BUT I COULD SEE NEAR THE DEFROSTER TRACES THE CRACK APPEARED TO FORM THERE. I'M CONCERNED THIS COULD HAVE BEEN FROM THERMAL STRESS AND THE WINDSHIELD SHOULD NOT HAVE CRACKED THAT EASILY. THE CRACK APPEARS TO BE COMING FROM INSIDE TO OUTSIDE AND SOME OF THE GLASS SORT OF FLAKED WHEN I PROBED IT WITH MY FINGER. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

June 9, 2019 NHTSA ID NUMBER: 11218804

## omponents: VISIBILITY/WIPER

**HTSA ID Number:** 11218804

**cident Date** June 8, 2019

**onsumer Location** CLARKSVILLE, TN

**ehicle Identification Number** JF2SKAJCXKH****

**ummary of Complaint**

| ¦ASH | No | WINDSHIELD SPONTANEOUSLY CRACKED WHILE PARKED IN THE GARAGE. CRACK BEGAN AT THE CENTER OF THE WINDSHIELD UNDERNEATH THE PLASTIC COVER AND FORMED A LARCH "S" SHAPED CRACK. CRACKS INTERFERE WITH THE EYESIGHT SAFETY SYSTEM AND VISIBILITY WHILE DRIVING. CAR WAS ONLY 3 WEEKS OLD WITH 1600 MILES. |
|---|---|---|
| ¦E | No | |
| ¦JURIES | 0 | |
| ¦ATHS | 0 | |

**Affected Product** ▾

**Request Research** (Services fees apply)

---

July 6, 2019 NHTSA ID NUMBER: 11229755

## Components: VISIBILITY/WIPER

**NHTSA ID Number:** 11229755

**Incident Date** July 3, 2019

**Consumer Location** WICHITA, KS

**Vehicle Identification Number** 4S4BSANC7K3****

**Summary of Complaint**

| CRASH | No | PURCHASED NEW 2019 SUBARU OUTBACK. WHEN PARKED IN THE GARAGE OVERNIGHT AFTER JUST A COUPLE WEEKS A STRESS CRACK BEGAN TO FORM FROM THE TOP OF THE WINDSHIELD GOING DOWN. THE NEXT DAY IT WAS OUTSIDE ON A HOT DAY AND THE CRACK BEGAN TO GET WORSE. NO IMPACT ON WINDSHIELD FROM ROCK OR ANYTHING ELSE. MAY BE CAUSED FROM HEAT? VEHICLE WAS STATIONARY IN BOTH CASES. |
|---|---|---|
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |



## V.    CLASS ALLEGATIONS

35.        Plaintiff brings this action pursuant to Federal Rules of Civil Procedure

23(a) and 23(b)(2) and/or (b)(3) on behalf of the following Classes for the maximum

time period allowable by law:

> **Nationwide Class:** All persons or entities who purchased or
> leased a Class Vehicle in the United States and (i) suffered a
> damaged windshield or (ii) who own or lease a Class Vehicle
> with the original or replacement windshield.
>
> **Wisconsin Class:** All persons or entities who purchased or
> leased a Class Vehicle in the United States and (i) suffered a
> damaged windshield or (ii) who own or lease a Class Vehicle
> with the original or replacement windshield.

The Nationwide Class and the Wisconsin Class are referred to collectively as the

"Classes."

36.        Plaintiff reserves the right to revise the definition of the Classes based

upon subsequently-discovered information and reserves the right to establish sub-

classes where appropriate.

37.       The Classes exclude Defendant and any entity in which Defendant has a controlling interest, as well as Defendant's officers, directors, legal representatives, successors, and assigns. The Classes also exclude judicial officers that have any role in adjudicating this matter.

38.       The Classes are each so numerous that joinder of all members is impracticable.

39.       Plaintiff believes that there are far in excess of 100 class members in Wisconsin and thousands of members of the Nationwide Class throughout the United States.

40.       A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

41.       Plaintiff's claims are typical of the claims of the Classes Plaintiff seeks to represent.

42.       As alleged herein, Plaintiff and Class members sustained damages arising out of the same actions and conduct of Defendant.

43.       Common questions of law and fact exist to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact include, but are not limited to:

- o   Whether Defendant made and breached express warranties concerning the windshields in the Class Vehicles;

- o   Whether Defendant made and breached implied warranties concerning the windshields in the Class Vehicles;

- o  Whether the windshields in the Class Vehicles are defective;

- o  Whether Defendant fraudulently omitted and/or concealed knowledge of the defect in the windshields in the Class Vehicles;

- o  Whether Defendant should accept responsibility for replacing the windshields in the Class Vehicles and/or buying back the Class Vehicles;

- o  Whether monetary damages, exemplary damages, restitution, equitable, injunctive, compulsory, or other relief is warranted.

44.    Plaintiff is willing and prepared to serve the Classes in a representative capacity with all the obligations and material duties necessary. Plaintiff will fairly and adequately represent and protect the interests of the Classes and has no interests adverse to or in conflict with the interests of any of the other members of the Classes.

45.    Plaintiff's interests are co-extensive with and not antagonistic to those of absent members within the Classes. Plaintiff will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

46.    Plaintiff has engaged the services of the undersigned counsel who are experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiff and absent members of the Classes.

47.    Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

48.    The Classes may also be certified under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with

respect to the Classes.

49.     The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical. The Classes have a high degree of similarity and are cohesive, and Plaintiff anticipates no difficulty in the management of this matter as a class action.

50.     The nature of notice to the proposed Classes is contemplated to be by direct mail upon certification of the Classes, or, if such notice is not practicable, by the best notice practicable under the circumstances including, amongst other things, email, publication in major newspapers, and the internet.

## VI.    CLAIMS FOR RELIEF

### COUNT ONE

### BREACH OF EXPRESS WARRANTY

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     Plaintiff brings this count on behalf of herself and the National Class and the Wisconsin Class.

53.     Subaru is and was at all relevant times a "merchant" with respect to motor vehicles and a "seller" of motor vehicles.

54.     The Class Vehicles are and were at all relevant times "goods."

55.     In connection with the purchase or lease of each one of its new vehicles, Subaru provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first.  This NVLW exists to cover "defect in materials or workmanship."

56.     Subaru's express warranty is uniform and made to all consumers across

the country who purchase or lease the Class Vehicles, and includes the following:

## Warranties

### 2018 Warranty

Below is a brief description of the Subaru Limited Warranty for 2018 model year Subaru vehicles that is provided to each buyer by Subaru at no additional charge. Your Subaru Dealer has complete details concerning the warranty and any exclusions and/or restrictions that may apply. Please visit your nearest Subaru Dealer for this further information. Click here for optional extended protection beyond the warranty.

#### Who Makes These Warranties

These warranties are made by SUBARU of America, Inc. ("SOA")[1], One Subaru Drive, P.O. Box 9103, Camden, NJ 08101.

#### When These Warranties Apply

These warranties only apply if the vehicle was imported or distributed by SOA and sold to the first retail purchaser by an Authorized SUBARU Retailer in the United States. Any and all repairs must be performed by an Authorized SUBARU Retailer located in the United States. Every owner of the vehicle during the warranty period shall be entitled to the benefits of these warranties. If the vehicle is sold or otherwise transferred, it is recommended and requested that the new owner promptly send written notice of the transfer of ownership to SOA at the address indicated above.

#### Warranty Periods

Warranty coverage begins on the date the vehicle is delivered to the first retail purchaser. If the vehicle was used as a demonstrator or company vehicle before being sold at retail, warranty coverage begins on the date the vehicle was first placed in such service.

#### What is Covered

These warranties cover any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use:

- In any part of the 2018 model year SUBARU which is identified on the inside front cover of this Warranty & Maintenance Booklet (the "vehicle").
- Any Genuine SUBARU Optional Accessories[2]
- In addition, adjustment services are covered one time only during the first 36 months/36,000 miles of operation, whichever comes first.

#### New Vehicle Limited Warranty

BASIC COVERAGE is 3 years or 36,000 miles, whichever comes first. Subject to the exclusions listed in this warranty, it covers the entire vehicle.

57.     Subaru's warranties formed the basis of the bargain that was reached when Plaintiff and other Class members purchased or leased their Class Vehicles equipped with the defective windshields.

58.     Plaintiff and the Class members experienced defects within the warranty period. Despite the existence of warranties, Subaru failed to inform Plaintiff and Class members that the Class Vehicles have defective materials and/or workmanship, and have failed to fix, repair or replace the defective windshields pursuant to the terms of the express warranty and at no charge to the Classes.

59.     Subaru breached the express warranty promising to repair and correct a manufacturing defect or defective materials or workmanship of any part of the Class Vehicles.

60.     Subaru had notice of Plaintiff's claim, as well as that of other Class members. Affording Subaru any additional opportunity to cure its breach of written

warranties would be unnecessary and futile here.

61.     Furthermore, the warranty promising to repair and/or correct a manufacturing or workmanship defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Class members whole, and because the replacement windshields that have and are being installed are likewise defective, and because Subaru has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

62.     Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

63.     Also, as alleged in more detail herein, at the time Subaru warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to Subaru's warranties and were inherently defective, and Subaru wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

64.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered due to Subaru's conduct as alleged herein. Due to Subaru's failure and/or continued failure to provide such limited remedy within a reasonable time, any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

65.     Subaru was provided notice of these issues by numerous complaints

voiced by consumers, including those formal complaints submitted to NHTSA and the instant Complaint, within a reasonable amount of time after the defect was discovered.

66.     As a direct and proximate result of Subaru's breach of express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT TWO

### VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT (Wis. Stat. § 110.18)

67.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

68.     This claim is brought on behalf of Plaintiff and the Wisconsin Class.

69.     Subaru is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

70.     Plaintiff and Wisconsin Class Members are members of "the public" within the meaning of Wis. Stat. § 100.18(1).  Plaintiff and Wisconsin Class Members purchased or leased one or more Class Vehicles.

71.     The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

72.     In the course of its business, Subaru willfully failed to disclose and actively concealed the defect in the windshields in the Class Vehicles and otherwise engaged in activities with a tendency or capacity to deceive.  Subaru also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection

21

with the sale of the Class Vehicles.

73.     Subaru knew it installed defective windshields in the Class Vehicles and sold the Class Vehicles with the defect and also knew that defective windshields were being used as replacements when consumers brought their Class Vehicles to dealers for replacement windshields.  Upon information and belief, Subaru knew this for one or more years before Class Vehicles were sold, but concealed all of that information from the public.

74.     Subaru valued profits over safety, and knew that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants.  Subaru concealed this information as well.

75.     By failing to disclose the defect in the windshields, and by marketing the vehicles as safe, reliable and dependable despite having such knowledge, Subaru engaged in deceptive business practices in violation of the Wisconsin DTPA.

76.     Subaru's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Wisconsin Class members, about the true performance of the Class Vehicles, the quality of the Subaru brand, the devaluing of safety and performance at Subaru, and the true value of the Class Vehicles.

77.     Subaru intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiff and the Wisconsin Class.

78.     Subaru knew or should have known that its conduct violated the Wisconsin DTPA.

79.     As alleged above, Subaru made material statements about the safety and

22

utility of the Class Vehicles and the Subaru brand that were either false or misleading.

80.     Subaru owed Plaintiff and the Wisconsin Class a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at Subaru, because Subaru:

a.     Possessed exclusive knowledge that it valued profits over safety and performance, and that it was manufacturing, selling, and distributing vehicles throughout the United States that included defective windshields that did not perform as advertised;

b.     Intentionally concealed the foregoing from Plaintiff and the Wisconsin Class; and/or

c.     Made incomplete representations about the safety and performance of the Class Vehicles generally, while purposefully withholding material facts from Plaintiff and the Wisconsin Class that contradicted these representations.

81.     Because Subaru fraudulently concealed the defective windshields and the true performance of cars equipped with the defective windshields, Plaintiff and the Wisconsin Class overpaid for their Class Vehicles and did not receive the benefit of their bargain.

82.     Subaru's fraudulent use of the defective windshields and the true performance of the Class Vehicles was material to Plaintiff and the Wisconsin Class. A vehicle made by a reputable manufacturer of safe, high-performing vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles with concealed and unrectified defects.

83.     Plaintiff and the Wisconsin Class suffered ascertainable losses caused by Subaru's misrepresentations and its concealment of and failure to disclose material

information.  Plaintiff and the Wisconsin Class members who purchased or leased the Class Vehicles would either have paid less for their vehicles or would not have purchased or leased the Class Vehicles but for Subaru's violations of the Wisconsin DTPA.

84.     Subaru had an ongoing duty to all Subaru customers to refrain from unfair and deceptive practices under the Wisconsin DTPA.  All owners and lessees of the Wisconsin Class Vehicles suffered ascertainable loss as a result of Subaru's deceptive and unfair acts and practices made in the course of Subaru's business.

85.     Subaru's violations present a continuing risk to Plaintiff and the Wisconsin Class as well as to the general public.  Subaru's unlawful acts and practices complained of herein affect the public interest.

86.     As a direct and proximate result of Subaru's violations of the Wisconsin DTPA, Plaintiff and the Wisconsin Class have suffered injury-in-fact and/or actual damage.

87.     Because Subaru fraudulently concealed the defective windshields and the true performance of vehicles equipped with the defective windshields,  the value of the Class Vehicles is less than reasonably expected and represented.

88.     Plaintiff and the Wisconsin Class are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2).  Because Subaru's conduct was committed knowingly and/or intentionally, Plaintiff and the Wisconsin Class are entitled to treble damages.

89.     Plaintiff and the Wisconsin Class also seek court costs and attorneys' fees under Wis. Stat. § 110.18(11)(b)(2).

## COUNT THREE

### FRAUD BY CONCEALMENT

90.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

91.      This claim is brought on behalf of Plaintiff and the Wisconsin Class.

92.      Subaru intentionally concealed the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiff and the other Wisconsin Class members information that is highly relevant to their purchasing decision.

93.      Subaru affirmatively represented to Plaintiff and the Wisconsin Class in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

94.      Subaru knew at the time it actively concealed the information about the defective windshields that this information was material to consumers.

95.      The Class Vehicles purchased or leased by Plaintiff and the other Wisconsin Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained faulty and defective windshields, as alleged herein.

96.      Subaru owed Plaintiff and the Wisconsin Class a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at Subaru, because Plaintiff and the other Wisconsin Class members relied on Subaru's material representations that the Class Vehicles were safe and free from defects.

97.      The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Wisconsin Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Class Vehicles at

the prices they paid.

98.      Plaintiff and the other Wisconsin Class members relied on Subaru's reputation – along with Subaru's failure to disclose the faulty and defective nature of the windshields – in purchasing or leasing the Class Vehicles.

99.      As a result of their reliance, Plaintiff and the other Wisconsin Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

100.      Subaru's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Wisconsin Class members.  Plaintiff and the other Wisconsin Class members are therefore entitled to an award of punitive damages.

## COUNT FOUR

### BREACH OF IMPLIED WARRANTY

101.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

102.      Plaintiff brings this count on behalf of herself and the National Class and the Wisconsin Class.

103.      At all relevant times, Subaru was the manufacturer, distributor, warrantor and seller of the Class Vehicles.

104.      Defendant is and was at all relevant times a merchant and seller of motor vehicles and parts within the meaning of the Uniform Commercial Code.

105.      Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which Class Vehicles are

26

used.

106.     Due to the defective windshields, the Class Vehicles were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable operation of the Class Vehicles.

107.     Defendant received notice of defective windshields by numerous consumer complaints made to dealers and distributors and/or other public complaints and through its own testing and investigations. Affording Defendant a further opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant knew of and concealed the defect and has refused to repair or replace the defective windshields, and additional losses, at no cost to Plaintiff and the Classes.

108.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

109.     Any attempt by Defendant to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable. A gross disparity in bargaining power and knowledge existed between Defendant and members of the Classes. Defendant knew or should have known that the Class Vehicles and windshields were defective and posed a serious safety risk.

## COUNT FIVE

### UNJUST ENRICHMENT

110.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

111.     Plaintiff brings this count on behalf of herself and the Wisconsin Class.

112.     Subaru has received and retained a benefit from Plaintiff and the Wisconsin Class and inequity has resulted.

113.     Subaru has benefitted from selling and leasing defective cars whose value was artificially inflated by Subaru's concealment of the defective windshields, and Plaintiff and the Wisconsin Class have overpaid for the cars and been forced to pay other costs.

114.     All Wisconsin Class members conferred a benefit on Subaru.

115.     It is inequitable for Subaru to retain these benefits.

116.     Plaintiff and the Wisconsin Class were not aware of the true facts about the Class Vehicles, and did not benefit from Subaru's conduct.

117.     Subaru knowingly accepted the benefits of its unjust conduct.

118.     As a result of Subaru's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiff and the Classes, and award the following relief:


A.     An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as representative of the Classes and Plaintiff's counsel as counsel for the Classes;

B.     An order awarding declaratory relief and enjoining Defendant from continuing the conduct and practices alleged above and requiring Defendant to accept

full liability and responsibility for the defective windshields in the Class Vehicles and all related damages;

C.        An order awarding costs, restitution, disgorgement, compensatory damages and out-of-pocket expenses in an amount to be determined at trial;

D.        Equitable relief in the form of buyback of the Class Vehicles;

E.        An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

F.        An award of costs, expenses, and attorneys' fees as permitted by law; and

G.        Such other or further relief as the Court may deem appropriate, just, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all claims in this action.

Date: October 18, 2019                    **LeVAN LAW GROUP LLC**

 /s/ Peter A. Muhic
Peter A. Muhic (NJ ID No. 041051994)
Peter H. LeVan Jr. (NJ ID No. 000431999)
One Logan Square – 27th Floor
Philadelphia, PA 19103-6933
Tel: 215.561.1500
Fax: 215.827.5390
pmuhic@levanlawgroup.com
plevan@levanlawgroup.com

Katrina Carroll
NJ ID No. 026212000
**CARLSON LYNCH LLP**
111 W. Washington Street Ste. 1240
Chicago, IL 60602
Tel: 312.750.1265
kcarroll@carlsonlynch.com

Edwin J. Kilpela, Jr
James P. McGraw, III
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412.322.9243
Fax: 412.231.0246
ekilpela@carlsonlynch.com
jmcgraw@carlsonlynch.com

*Attorneys for Plaintiff and
the Proposed Classes*