**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| **CHRISTINE POWELL,** *Individually and on behalf of all others similarly situated,* <br><br> **Plaintiff,** <br><br> v. <br><br> **SUBARU OF AMERICA, INC., et al.,** <br><br> **Defendants.** | **Civil No. 19-19114 (MJS)** <br><br> **OPINION & ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT** |

This matter is before the Court on Plaintiffs' unopposed motion for preliminary approval of the class action settlement [ECF No. 146] ("Motion"). Plaintiffs' motion seeks an order: (1) granting preliminary approval of the parties' proposed Settlement Agreement ("Agreement"), ECF No. 148;[1] (2) conditionally certifying the proposed Settlement Class for settlement purposes; (3) conditionally appointing the named plaintiffs as Representative Plaintiffs and appointing Peter A. Muhic, Russell D. Paul, and Edwin J. Kilpela, Jr., as Settlement Class Counsel; (4) approving the proposed Class Notice and plan for disseminating the Class Notice ("Notice Plan"); (5) conditionally appointing JND Legal Administration as the Settlement Administrator; (6) setting deadlines for the filing of any objections to, or requests for exclusion from, the Settlement, and for other submissions in connection with the Settlement approval process; and (7) setting a Final Fairness Hearing date and briefing schedule for final approval of the Settlement and Plaintiffs' application for attorneys' fees, reimbursement of costs and expenses, and service awards for the

---

[1] The Court has reviewed the unredacted version of the Agreement, which was submitted to this Court as an exhibit to the declaration of Peter A. Muhic and filed under seal. ECF No. 147.

Representative Plaintiffs. The Court, with the consent of counsel, has signed an order referring all settlement-related proceedings to the undersigned United States Magistrate Judge [ECF No. 140]. 28 U.S.C. § 636(c)(1). Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), the Court decides this motion without oral argument. For the reasons that follow, Plaintiffs' motion is **GRANTED.**

## Background

The initial complaint in this action was filed on October 18, 2019. ECF No. 1. The complaint alleged that defendant Subaru of America ("SOA") manufactured, marketed, and sold new vehicles with defective windshields that were susceptible to spontaneous cracking, chipping, or otherwise breaking in a dangerous manner, and further replaced those windshields with similarly defective windshields. Id. ¶ 1. A second amended complaint followed on November 12, 2019, which joined additional plaintiffs and class vehicles and asserted claims on behalf of certain state sub-classes. ECF No. 12. This litigation was consolidated with two other similar actions on January 27, 2020. ECF No. 25. On February 6, 2020, sixteen named plaintiffs filed a consolidated class action complaint against SOA and Subaru Corporation (collectively, "Defendants"). ECF No. 27. The operative complaint was filed on December 23, 2020, and Defendants' answer was filed on January 18, 2021. ECF Nos. 69, 73. On March 28, 2024, all but four of the named plaintiffs were dismissed from the action with prejudice by way of stipulation. ECF No. 143. The remaining named Plaintiffs—Jeffrey Barr, Arnold Milstein, Allan Zaback, and Brittany Funk—now seek conditional appointment as the representative plaintiffs in this litigation. ECF No. 146-1 at 10.

Discovery in this matter has included negotiating a protocol for the production of electronically stored information, exchanging written interrogatories and document requests between all parties, serving third-party document and deposition subpoenas, and taking depositions

of eleven of the named plaintiffs and multi-day depositions of Defendants' representatives. Declaration of Peter Muhic ("Muhic Decl."), ECF No. 147 ¶ 9. The parties' document production resulted in the production of over 16,000 documents, of which "significant numbers . . . had to be translated into English from Japanese." Id. These documents included "warranty data and records of . . . stress testing" performed by Defendants. Id. ¶ 10. On March 31, 2023, this Court entered an order referring the matter to mediation and staying all pending deadlines while mediation remained ongoing. ECF No. 127. The parties continued to exchange document discovery regarding the alleged defect and Defendants' relevant testing throughout the mediation, and on November 6, 2023, the parties informed the Court that they had reached an agreement in principle as to all material terms of the settlement. Muhic Decl. ¶ 12;  ECF Nos. 128-133. With the parties' consent, all further proceedings were referred to this Court on March 12, 2024. ECF No. 140. The parties thereafter filed this motion seeking preliminary approval of the Agreement. ECF No. 146.

The proposed settlement class ("Settlement Class Member") is defined as:

> All natural persons who are residents of the continental United States, Alaska, or Hawaii, currently or previously owning or leasing a Settlement Class Vehicle originally purchased or leased in the continental United States, Alaska, or Hawaii. Excluded from the Settlement Class are (a) all Judges who presided over the Action and their spouses; (b) all current employees, officers, directors of Defendants and their immediate family members; (c) any affiliate, parent, or subsidiary of Defendants and any entity in which Defendants have a controlling interest; (d) used car dealers; (e) anyone who purchased a Settlement Class Vehicle solely for resale; (f) anyone who purchased a Settlement Class Vehicle with a salvaged title and/or any insurance company that acquired a Settlement Class Vehicle as a result of a total loss; (g) issuers of extended vehicle warranties and service contracts; (h) any Settlement Class Member who, prior to the date of the Settlement Agreement, settled with and released Defendants or any Released Parties from any Released Claims; (i) any Settlement Class Member filing a timely and proper Request for Exclusion from the Settlement Class.

Agreement, § C, ¶ 1. The term "Settlement Class Vehicle" refers to "model year 2019 through 2022 Subaru Ascent vehicles, model year 2019 through 2022 Subaru Forester vehicles, model year 2020 through 2022 Subaru Legacy vehicles, and model year 2020 through 2022 Subaru Outback vehicles." Agreement, § B, ¶ 27.

The Agreement provides Settlement Class Members with two types of relief, in exchange for which the Settlement Class Members will release Defendants from any and all causes of action or claims for damages "concerning alleged defects in the windshields of the Settlement Class Vehicles." Agreement, § B, ¶ 22; Id. § F, ¶ 3. First, under the proposed terms of the Agreement, qualifying Settlement Class Members are eligible to recover between 100% and 200% of their out-of-pocket expenses incurred as a result of needing to repair or replace their windshields due to the alleged defect depending on the proof they can produce to accompany their claims. Agreement, § G, ¶ 2(e). The Agreement sorts qualifying Settlement Class Members into two groups: (1) those who can produce proof that they incurred a qualifying repair cost prior to the close of the claims period and contemporaneous photographs confirming the damage (Tier 1); and (2) those can produce proof of costs prior to the notice date but do not have contemporaneous photographs of the damage (Tier 2). Agreement, § G, ¶ 2. Settlement Class Members who can satisfy the requirements of Tier 1 claims are eligible to recover at least 125% of their costs. Agreement, § G, ¶ 2(e)(ii)(2). Those who fall under Tier 2 will recover up to 100% of their costs, subject to a conditional $2 million limit,[2] upon completion of a photo questionnaire designed to verify their

---

[2] The Agreement provides that the sum of Tier 2 claims is not expected to exceed $2 million, but in the event it does, each claim shall be proportionally reduced according to the number of qualifying claims filed. Agreement, § G, ¶ 2(e)(3). Absent clear evidence of fraud, no successful Tier 2 claimant will receive less than 25% of their approved claim. Id.; ECF No. 146-1 at 18.

claim. Agreement, § G, ¶ 2(e)(ii)(3); ECF No. 146-1 at 17. There is no limit to the total amount of Tier 1 claims to be paid by Defendants. ECF No. 146-1 at 17.

The second form of relief provided by the Agreement is an extended warranty for a period of eight years or 100,000 miles, whichever occurs first, which will cover all parts and costs associated with a one-time replacement of a windshield with the alleged defect (a "pre-counter-measure windshield") with a windshield without the alleged defect (a "post-counter-measure windshield"), to be performed by an Authorized Subaru Dealer. Agreement, § G, ¶ 1. The extended warranty period will become effective three business days following the deadline for Settlement Class Members to submit claims for reimbursement. Id. All Settlement Class Members are eligible for the extended warranty period, even if they do not qualify for reimbursement, and the extended warranty period is transferrable between owners and/or lessees during its coverage period. Id.

In addition to these terms, the Agreement sets forth a proposal for notice and administration of the settlement. Under this plan, the Settlement Administrator, who the parties propose should be JND Legal Administration, will disseminate all required notices, administer any requests for exclusion, and oversee the review, approval, and payment of any claims for reimbursement made pursuant to the Agreement. ECF No. 146-1 at 19. The Agreement provides that Defendants shall bear all costs associated with notice of the settlement and settlement administration without any impact on the Settlement Class Members' potential recovery. Agreement, § C, ¶ 3. The Agreement also contains terms regarding attorneys' fees, costs, and service awards to the named plaintiffs, which Plaintiffs represent were separately negotiated after the parties agreed to the substantive terms of the settlement. Muhic Decl., ¶ 14. Under the terms of the agreement, the fees, costs, or awards ultimately granted will not reduce the benefits available to the Settlement Class Members.

Agreement, § N, ¶ 1. Plaintiffs do not currently seek the Court's approval of the fees, costs, or awards listed, which will be the subject of a separate motion. ECF No. 146-1 at 23-24.

**Discussion**

**I.      Provisional Certification of the Settlement Class**

"Federal Rule of Civil Procedure 23 allows the Court to certify a class for settlement purposes only." In re Prudential Ins. Co. of Am. Sales Pracs. Litig., 962 F. Supp. 450, 508 (D.N.J. 1997). "To certify a class for settlement purposes, a district court must determine that the requirements for class certification under Rule 23(a) and (b) are met." Atis v. Freedom Mortg. Corp., Civ. No. 15-03424, 2018 WL 5801544, at *5 (D.N.J. Nov. 6, 2018) (citing In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 341 (3d Cir. 2010)). "Additionally, where, as here, a settlement class is sought to be certified under Rule 23(b)(3), the class must satisfy the Rule's superiority and predominance requirements." Chemi v. Champion Mortg., No. 2:05-cv-1238, 2009 WL 1470429, at *3 (D.N.J. May 26, 2009).

A.      Rule 23(a)

The Court begins with the requirements of Rule 23(a). See In re Modafinil Antitrust Litig., 837 F.3d 238, 249 (3d Cir. 2016) (noting that "the requirements of Rule 23(a) are 'threshold requirements'" and should be considered first). Rule 23(a) sets out four prerequisites to the certification of a class: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In re Prudential, 962 F. Supp. at 508. "A plaintiff bears the burden of demonstrating that these requirements are met by a preponderance of the evidence, and the district court 'must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties.'" Udeen v. Subaru of Am., Inc., Civ. No. 18-17334, 2019

WL 4894568, at *4 (D.N.J. Oct. 4, 2019) (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2008)). The Court addresses each requirement in turn.

        1.     Numerosity

Pursuant to Rule 23(a)(1), a class action may only be maintained if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); Chemi, 2009 WL 1470429, at *6. In the Third Circuit, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," but "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Modafinil, 837 F.3d at 249-50 (alteration in original) (quoting Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)). In this case, the documents supporting the motion indicate that there are approximately 1.4 million class vehicles in the United States, indicating that there are over one million potential plaintiffs. ECF No. 146-1 at 25. The Court is therefore satisfied that the proposed class is sufficiently numerous.

        2.     Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-50 (2011) (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 157 (1982)). This requirement "'does not mean merely that [class members] have all suffered a violation of the same provision of law'; rather, '[t]heir claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution.'" Alin v. Honda Motor Co., Ltd., Civ. No. 08-4825, 2012 WL 8751045, at *4 (D.N.J. Apr. 13, 2012) (alterations in original) (quoting Dukes, 564 U.S. at 350). "The commonality inquiry is satisfied where 'all putative class members were subjected to the same

harmful conduct by the defendant,' even in the presence of 'legal and factual differences among the putative class members.'" Neale v. Volvo Cars of N. Am., LLC, Civ. No. 10-4407, 2021 WL 3013009, at *6 (D.N.J. July 15, 2021) (quoting In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig., 795 F.3d 380, 398 (3d Cir. 2015)).

In this case, Plaintiffs allege that Defendants knew or should have known that the Settlement Class Vehicles suffered from design defects that caused the windshields to be unreasonably susceptible to cracking, and those defects were material, should have been disclosed, and caused Plaintiffs to incur hundreds of dollars in expenses to repair or replace their windshields. ECF No. 69 ¶¶ 48-62. Evidence concerning the alleged defect and Defendants' knowledge of the alleged defect, as well as issues concerning Defendants' duty to disclose the alleged defect, are all central to the validity of Plaintiffs' claims and would be common to all proposed class members. Therefore, the commonality requirement is satisfied.

###    3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is "intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees." Laurens v. Volvo Car USA, LLC, Civ. No. 2:18-cv-8798, 2020 WL 10223641, at *7 (D.N.J. Dec. 8, 2020) (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d Cir. 2001)). Although "closely related" to the commonality requirement, the typicality requirement works to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of fact or law are present." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 598 (3d Cir. 2012) (quoting 7A Charles Alan Wright et al., Federal Practice & Procedure

§ 1764 (3d ed. 2005)). "The Third Circuit has adopted a 'low threshold' for typicality," and "[e]ven pronounced factual differences' will not destroy typicality where there is a 'strong similarity of legal theories' or where each claim 'arises from the same practice or course of conduct.'" Neale, 2021 WL 3013009, at *6 (quoting In re Nat'l Football League Players Concussion Inj. Litig. (In re NFL Players) 821 F.3d 410, 428 (3d Cir. 2016)).

Here, Plaintiffs' and the class members' claims all arise out of the same alleged defect, the same acts Defendants allegedly engaged in to conceal that defect, and the same resulting damages. Plaintiffs and the proposed class members are all current or previous owners or lessees of Settlement Class Vehicles. Plaintiffs and the class members would make the same legal arguments to support their claims. Therefore, the typicality requirement is satisfied. See id. at *7 (finding typicality met where plaintiffs alleged uniform defect across all class vehicles); Udeen, 2019 WL 4894568, at *5 (finding typicality satisfied where claims "all originated from the same allegedly defective product and Defendants' alleged actions to conceal that defect, relying on the same legal theories"); Alin, 2012 WL 8751045, at *6 (finding typicality satisfied where claims involved defect common to all class vehicles, named plaintiffs each owned or leased a vehicle in the class, and each plaintiff incurred repair costs as a result of alleged defects).

### 4.    Adequacy of Representation

The final Rule 23(a) prerequisite to class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This 'adequacy' requirement has two components: (1) whether Plaintiffs' counsel is qualified, experienced, and able to conduct the litigation; and (2) whether any of conflicts of interest exist between the named parties and the class they seek to represent." Udeen, 2019 WL 4894568, at *5.  "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative

plaintiffs and the rest of the class." Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 183 (3d Cir. 2012). The Court must determine whether the named representatives have "the ability and the incentive to represent the claims of the class vigorously, that [they have] obtained adequate counsel, and that there is no conflict between the [representatives'] claims and those asserted on behalf of the class." Laurens, 2020 WL 10223641, at *10 (quoting Sapir v. Averback, Civ. No. 14-CV-07331, 2015 WL 858283, at *3 (D.N.J. Feb. 26, 2015)).

a)    Adequacy of Class Counsel

Rule 23(g) provides the criteria for evaluating the qualifications of Plaintiffs' counsel. Sheinberg v. Sorensen, 606 F.3d 130, 132 (3d Cir. 2010). Accordingly, the Court considers: (1) the work that counsel has done in identifying and investigating potential claims; (2) counsel's experience; (3) counsel's knowledge of applicable law; and (4) the resources counsel will expend in representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Defendant does not oppose the appointment of the proposed class counsel, and the Court finds that the proposed class counsel are well-qualified to represent the class. The proposed class counsel is comprised of attorneys with extensive experience in multi-state class actions and other complex litigation, including numerous class actions involving motor vehicle products liability claims. See Declaration of Edwin J. Kilpela, Jr. ("Kilpela Decl."), ¶¶ 4-5 [ECF No. 146-2]; Declaration of Russell Paul ("Paul Decl."), ¶¶ 4-6 [ECF No. 146-3]; Muhic Decl., ¶ 5 [ECF No. 147]. Counsel has also been involved in this litigation since its early stages [ECF Nos. 4, 17, 28], and throughout this time, has demonstrated a thorough knowledge of the applicable law. Moreover, counsel has invested a significant amount of time and resources in investigating the claims at issue,

engaging in formal discovery, reviewing test results, consulting with technical experts, and negotiating the terms of the settlement through a lengthy formal mediation process. Muhic Decl., ¶¶ 8, 16. Therefore, the Court finds that Plaintiffs have established the adequacy of counsel.

b)    Adequacy of Representative Plaintiffs

"Class representatives are adequate if they demonstrate (1) '[a] minimal degree of knowledge' about the litigation; and (2) that no 'fundamental' conflict of interest exists between the representatives and the class." Neale, 2021 WL 3013009, at *7 (quoting In re NFL Players, 821 F.3d at 430). Here, the record shows that Plaintiffs assisted counsel with responding to written discovery requests, gave deposition testimony, and remained in contact with counsel throughout the settlement negotiations process. Muhic Decl., ¶ 20. Moreover, the Court can find no fundamental conflict of interest between Plaintiffs and the defined class. Although the Agreement divides the class into groups and provides different benefits to each one, there is nothing to suggest that the groups were drawn to disproportionately favor Plaintiffs. Compare Rossini v. PNC Fin. Servs. Grp., Inc., Civ. No. 2:18-cv-1370, 2020 WL 3481458, at *9 (W.D. Pa. June 26, 2020) (finding requirement satisfied where named plaintiffs were also members of "lesser" classes and distribution appeared to reflect reasonable value of actual injury), with Dewey, 681 F.3d at 187-88 (finding fundamental conflict where proposed allocation gave named plaintiffs' group priority access to available funds). In addition, to the extent that Plaintiffs are eligible for reimbursement, the Agreement is structured such that the payment of claims to one group has no impact on the amount paid to the other. See Dewey, 681 F.3d at 187-88. The Court finds that there is an alignment of interests between Plaintiffs and the proposed settlement class and that Plaintiffs are appropriate representatives for this litigation.

B.       Rule 23(b)(3) — Predominance and Superiority

Having determined that Plaintiffs have satisfied the prerequisites of Rule 23(a), the Court next considers whether Plaintiffs have met the requirements of Rule 23(b)(3), that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 622 (1997). As for superiority, the Court's task is to "balance, in terms of fairness and efficiency, the class action method of proceeding against alternative available methods of adjudication." Rudel Corp. v. Heartland Payment Sys., Inc., Civ. No. 16-2229, 2017 WL 4422416, at *4 (D.N.J. Oct. 4, 2017) (quoting Smith v. Pro. Billing & Mgmt. Servs., Inc., Civ. No. 06-4453, 2007 WL 4191749, at *4 (D.N.J. Nov. 21, 2007)).

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." Sullivan v. DB Invs., Inc., 667 F.3d 273, 297 (3d Cir. 2011). Here, the Settlement Class consists of all owners and lessees of Settlement Class Vehicles that were originally purchased in the continental United States, Alaska, or Hawaii. Agreement, § C ¶ 1. The asserted claims are, broadly speaking, breach of express warranty, breach of implied warranty of merchantability, violations of various state and federal consumer protection statutes, and unjust enrichment (CAC, ¶¶ 302-523). The alleged design defect and Subaru's alleged conduct regarding the manufacture and sale of the Settlement Class Vehicles lies at the core of these claims, and each Settlement Class member is alleged to have been harmed in the same way. These common issues

predominate over any individual variations in potential claims, such as differences in state law or the precise figure of damages.[3]

The class action is also the "superior" method of adjudicating this controversy. Rule 23(b)(3) provides courts with a non-exhaustive list of factors for consideration when determining the superiority of a class action: (1) the class members' interests in individually litigating separate actions; (2) the extent and nature of any related litigation begun by or against the class members; (3) the desirability or undesirability of concentrating the claims in a particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Here, individual class members have little interest in maintaining separate actions because their alleged losses are relatively minor compared to the cost of prosecuting a lawsuit. See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534 (3d Cir. 2004). Moreover, the Court is not aware of other litigation concerning this controversy, and concentrating the claims in New Jersey is desirable because New Jersey is Defendant SOA's state of incorporation, as well as where it maintains its principal place of business and headquarters. CAC, ECF No. 27 ¶ 38. Therefore, the Court finds that the superiority requirement is satisfied. See Atis, 2018 WL 5801544, at *7.

## II.    Appointment of Class Counsel

Having determined that the proposed class is suitable for certification, the Court must now appoint class counsel. See Fed. R. Civ. P. 23(g)(1); see also Jones v. Com. Bancorp, Inc., Civ. No.

---

[3]  In any event, such differences likely would not defeat the predominance requirement, as the class at issue is presented for settlement purposes only. See McGowan v. CFG Health Network, LLC, Case No. 3:22-cv-2770, 2024 WL 1340329, at *6 (D.N.J. Mar. 28, 2024) ("Where, as here, 'common issues which determine liability predominate,' calculating damages on an individual basis does not prevent an otherwise valid certification." (quoting Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977)); Sullivan, 667 F.3d at 304 ("[S]tate law variations are largely 'irrelevant to certification of a settlement class." (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 529 (3d Cir. 2004)).

05-5600, 2007 WL 2085357, at *4 (D.N.J. July 16, 2007). Here, Plaintiffs seek an order appointing their attorneys, Peter A. Muhic, Russell D. Paul, and Edwin J. Kilpela, Jr., as Settlement Class Counsel. As noted above, Plaintiffs' counsel have extensive prior experience with complex and class action litigation, including those involving alleged motor vehicle defects. Moreover, counsel have collectively and individually expended considerable resources in investigating the claims in this action. See Kilpela Decl., ¶ 6; Paul Decl., ¶ 8; Muhic Decl., ¶¶ 7-16. Therefore, the Court finds that Peter A. Muhic, Russell D. Paul, and Edwin J. Kilpela, Jr., are fit to serve as Settlement Class Counsel and will grant Plaintiffs' request.

## III.    Preliminary Approval of the Proposed Settlement Agreement

"Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval, which may issue only 'on finding that [the settlement] is fair, reasonable, and adequate.'" In re Nat'l Football League Players' Concussion Inj. Litig. (In re Nat'l Football League) 961 F. Supp. 2d 708, 713 (E.D. Pa. 2014) (quoting Fed. R. Civ. P. 23(e)(2)). Review of a proposed class settlement typically proceeds in two stages. At the first stage, preliminary approval, the reviewing court performs a "preliminary fairness evaluation" to determine "whether the proposed settlement is 'likely' to be approved under Rule 23(e)(2)." Wood v. Saroj & Manju Invs. Phila. LLC, Civ. No. 19-2820, 2020 WL 7711409, at *10 (E.D. Pa. Dec. 28, 2020) (quoting Fed. R. Civ. P. 23(e)(1)(B)). If the court grants preliminary approval, the court then directs that notice of the settlement be provided to all class members. At the second stage, the court holds a formal hearing to determine whether the settlement is "fair, reasonable, and adequate." Weissman v. Philip C. Gutworth, P.A., Civ. No. 14-0666, 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015) (quoting Fed. R. Civ. P. 23(e)(2)). In this case, the proposed settlement is under the first stage of review.

A.    Fairness

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." Zimmerman v. Zwicker & Assocs., P.C., 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011). At the preliminary approval stage, the court's inquiry generally considers whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995). These factors, if established, will impart a presumption of fairness upon the proposed settlement. In re Nat'l Football League, 961 F. Supp. 2d at 714.

The Court's preliminary approval is not binding and is typically granted unless the proposed settlement is obviously deficient. Weissman, 2015 WL 333465, at *2 That said, preliminary approval is not merely a "rubber stamp" of the parties' agreement. In re Nat'l Football League, 961 F. Supp. 2d at 714. "While the issue of final settlement approval is not presently before the Court, it is important to consider the final approval factors during this stage so as to identify any potential issues that could impede the offer's completion." Singleton v. First Student Mgmt. LLC, Civ. No. 13- 1744, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014). As articulated by the Third Circuit, these factors, sometimes called the Girsh factors, include:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

15

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975).

Having considered all of the aforementioned factors, the Court finds that each factor weighs in favor of preliminary approval. The proposed settlement appears to have been negotiated at arm's length, having been crafted over the course of multiple in-person mediation sessions and telephonic meetings with a third-party mediator. Muhic Decl. ¶ 11.  The parties also appear to have exchanged substantial discovery, including over 16,000 pages of documents, responses to written interrogatories, subpoenas to third parties, and depositions of both parties' representatives. Id. ¶ 9. Negotiations lasted several months before the parties reached an agreement in principle as to all material terms. Id. ¶¶ 12-14. As noted above, Plaintiffs' counsel has substantial experience in similar litigation. And, finally, though the Court does not yet have information regarding potential objections from putative class members, preliminary approval is appropriate because the putative class members will have the opportunity to object after they are formally notified of the class action and proposed settlement. See Weissman, 2015 WL 333465, at *2.

To the extent they can be assessed at this stage, the Girsh factors also support preliminary approval. With respect to the first factor, this case involves complex technical and engineering questions. Defendants have consistently denied, and continue to deny, all allegations of liability or wrongdoing, as well as that Plaintiffs' claims would be suitable for class treatment if the action proceeded through litigation and trial. Agreement, § A, ¶ 3. Were the matter to proceed, the parties

"would be engaged in contested motion practice and adversarial litigation for years." ECF No. 146-1 at 34. As a result, given the "probable costs, in both time and money of continued litigation," the Court finds that the first factor weighs in favor of preliminary approval. Little-King v. Hayt Hayt & Landau, Civ. No. 11-5621, 2013 WL 4874349, at *8 (D.N.J. Sept. 10, 2013) (quoting In re Cendant Corp. Litig., 264 F.3d 201, 233 (3d Cir. 2001)).

The Court cannot at this point assess the second Girsh factor, since the class has yet to be notified of the litigation. However, the third factor arguably supports approval. As discussed, the parties have exchanged a substantial volume of discovery regarding the alleged windshield defect, providing them with a clear understanding of the strengths and weaknesses of the case. See Muhic Decl. ¶ 13. The fourth and fifth factors, which "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement," similarly favor approval. In re Warfarin, 391 F.3d at 537. Here, if the action were to proceed to trial, the parties would likely contest certification, liability, and damages, none of which are certain in this case and would require the parties to expend significant resources to resolve. ECF No. 146-1 at 42. The presence of "significant uncertainties and risks in continuing this litigation" support granting preliminary approval. Singleton, 2014 WL 3865853, at *6. With respect to the sixth factor, which "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial," Plaintiffs candidly acknowledge that "there is a risk of not obtaining class certification should this action be litigated rather than settled" based on Defendants' likely argument that individualized factual issues could render the proposed class unmanageable. ECF No. 146-1 at 42; see In re Warfarin, 391 F.3d at 537 ("A district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be

unmanageable."). The Court agrees with Plaintiffs' assessment and finds that the sixth factor likewise weighs in favor of approval.

The seventh <u>Girsh</u> factor considers whether Defendants "could withstand a judgment for an amount significantly greater than the [proposed] Settlement." <u>Little-King</u>, 2013 WL 4874349, at *11 (quoting <u>Cendant Corp.</u>, 264 F.3d at 240). This factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." <u>Udeen</u>, 2019 WL 4894568, at *3 (quoting <u>In re NFL Players</u>, 821 F.3d at 440). This factor is neutral, since the parties have not presented any arguments regarding Defendants' ability to pay a larger settlement. <u>In re NFL Players</u>, 821 F.3d at 440.

Finally, as for the eighth and ninth <u>Girsh</u> factors, the Court considers "whether the settlement represents a good value for a weak case or a poor value for a strong case." <u>Id.</u> (quoting <u>In re Warfarin</u>, 391 F.3d at 538). "The reasonableness of a proposed settlement is assessed by comparing 'the present value of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement." <u>Sullivan</u>, 667 F.3d at 323-34 (alterations in original) (quoting <u>In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions</u>, 148 F.3d 283, 322 (3d Cir. 1998)). Here, the proposed settlement will provide Settlement Class Members with out-of-pocket reimbursements for up to 100% or more of their Qualified Repair Expenses, as well as an extended warranty that will cover "all parts and labor costs associated with the replacement of the windshield due to a Qualifying Crack, performed by an Authorized Subaru Dealer." <u>Agreement</u>, § G, ¶ 1(c). Moreover, the Agreement assigns the costs of administrating the settlement to Defendants without reducing the available benefits to any Settlement Class Members. <u>Id.</u> ¶ 5(a). In that regard, the proposed settlement provides targeted, specific relief to the Settlement Class Members that is proportionate

to their claims. Further, the proposed settlement ensures that the relief will be delivered in a relatively timely fashion by requiring the Settlement Administrator to mail a check for the approved recovery to the appropriate Settlement Class Member within sixty days of the finalization of the final judgment and order in this matter. Id. § H, ¶ 1(a). See Udeen, 2019 WL 4894568, at *3 ("Given the litigation risks Plaintiffs have identified, the provision of substantial, targeted, and timely relief in the Agreement is certainly within the range of reasonableness."). Therefore, the eighth and ninth Girsh factors support preliminary approval.

In short, none of the aforementioned factors weigh against settlement, and, indeed, many weigh in favor. Further, there is no indication that the proposed agreement improperly favors any segment of the class over another. See Jones, 2007 WL 2085357, at *2. While the agreement provides that the representative plaintiffs will each receive "Service Awards" for their services on behalf of the class, those payments will not reduce the benefits being made to the Settlement Class Members in any way, nor will the Settlement Class Members be required to pay any portion of any attorneys' fees or expenses ultimately awarded.[4] Agreement, § N, ¶ 3. The proposed settlement is reasonable and does not present any obvious deficiencies. Therefore, the standards for preliminary approval are met.

B.    Approval of the Proposed Notice Plan

Finally, Rule 23 requires that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal" upon finding that the proposed settlement will likely satisfy the requirements for final approval and the proposed class will meet the requirements for final certification. Fed. R. Civ. P. 23(e)(1)(B). "To satisfy the notice requirement, the party

---

[4]  The Court emphasizes that the service payments to the class representatives and proposed fees to class counsel are subject to approval at or after the final fairness hearing. Jones, 2007 WL 2085357, at *2.

proposing settlement must comply with the guidelines contained in Rule 23(c) and 23(e)(2)." Shapiro v. Alliance MMA, Inc., Civ. No. 17-2583, 2018 WL 3158812, at *7 (D.N.J. June 28, 2018). Where, as here, certification is sought pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The form of notice is committed to the district court's discretion, 'subject to due process requirements.'" Atis, 2018 WL 5801544, at *8 (quoting Zimmer Paper Prods., Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir. 1985)).

The proposed notice must state, clearly and concisely and in plain, easily understood language:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "In addition to the requirements of Rule 23, due process further requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" In re NFL Players, 821 F.3d at 435 (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)). Thus, the proposed notice must inform putative class members of: (1) the nature

of the pending litigation; (2) the general terms of the settlement; (3) the availability of additional information from the court files; and (4) the right of any class member to appear and be heard at the final fairness hearing. In re Prudential, 962 F. Supp. at 527. The notice "need not be unduly specific," but it must "describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." Atis, 2018 WL 5801544, at *9 (quoting In re Diet Drugs, 226 F.R.D. 498, 518 (E.D. Pa. 2005)).

Here, the proposed notice program (the "Notice Plan") provides that within seventy-five days after the entry of a preliminary approval order, the Settlement Administrator shall begin mailing the short-form notice, attached as Exhibit B to the Agreement [ECF No. 147-1 at 53-56], to the current or last known addresses of all Settlement Class Members by first-class mail. Agreement, § I, ¶ 2. Within the same time-frame, a long-form notice, attached as Exhibit A to the Agreement [ECF No. 147-1 at 39-51], shall be made available on a website to be established by Defendants (the "Settlement Website"). Id. Under the terms of the Notice Plan, Defendants will obtain the names and last known addresses for the Settlement Class Members by reference to the vehicle identification numbers of the Settlement Class Vehicles. Id. The Settlement Administrator shall confirm the address information with the United States Postal Service, making updates where necessary, prior to mailing the short-form notice. Id. If a notice is returned as undeliverable, the Notice Plan requires the Settlement Administrator to conduct an additional search for an updated address, and re-mail the notice to the extent it locates a new and current address. Id.[5]

The short-form notice will provide recipients with: a brief description of this action, the Settlement Class, and the proposed settlement; a URL directing Settlement Class Members to the

---

[5]  Counsel's Supplemental Declaration [ECF No. 153] provides additional detail regarding the mailing and notice procedures to be followed by JND, which the Court has considered.

Settlement Website and advising them that the long-form notice can be found there; the deadline for submitting claims, objections, or opt-out requests; and a toll-free number and/or email address at which the Settlement Administrator can be reached for additional information or where individuals may request a copy of the long-form notice. Id. § I, ¶ 3. The proposed long-form notice provides detailed information about the consequences of accepting or opting out of the settlement, how to submit a request for exclusion from the settlement, how Settlement Class Members can raise objections at the final fairness hearing, and informs class members of Class Counsel's intent to seek attorneys' fees. ECF No. 147-1 at 44-49. In addition to the long-form notice, the Settlement Website will also provide Settlement Class Members with instructions for submitting claims for reimbursement and contacting Defendants and Class Counsel, and will contain online claims submission forms, a redacted version of the Agreement, and any additional information agreed to by counsel for the parties. Agreement, § I, ¶ 2.

Having reviewed the proposed forms, the Court finds that they "fairly, accurately, and neutrally describe the claims and parties in the litigation as well as the terms of the proposed settlement and the identity of the parties entitled to participate in it." Udeen, 2019 WL 4894568, at *7 (quoting Shapiro, 2018 WL 3158812, at *7). Moreover, the Court finds that the proposed Notice Plan implements the best notice practicable under the circumstances because it ensures a relatively timely delivery of notice to the Settlement Class members, and to the extent that some class members may not receive notice under the current proposal, there is no alternative method of distribution that is more likely to result in delivery. See Jones, 2007 WL 2085357, at *5. Therefore, the proposed notice program satisfies both Rule 23 and due process requirements.

IV.    **Appointment of Settlement Administrator**

Plaintiffs also seek the provisional appointment of JND Legal Administration as the Settlement Administrator. The settlement agreement provides by stipulation that Defendants will bear all costs of notifying the Settlement Class Members and administrating the settlement. On the record before it, the Court has identified no obvious conflict or other basis to deny the appointment. Therefore, the Court will grant the provisional appointment of JND Legal Administration as the Settlement Administrator.

## ORDER

For all of the foregoing reasons, Plaintiffs' unopposed motion for preliminary approval of the proposed class action settlement is **GRANTED.** Accordingly, the Court having considered the submissions, arguments, and authorities in support of preliminary approval of the settlement,

**IT IS** on this **3rd** day of **October 2024,**

**ORDERED** that the Court hereby incorporates the terms of the parties' Settlement Agreement and Release ("Agreement") for the purposes of this preliminary approval order, including the definitions set forth in the Agreement [ECF No. 148]; and it is further

**ORDERED** that Plaintiffs' request for conditional certification of the settlement class for settlement purposes only is **GRANTED** as to the following class:

> All natural persons who are residents of the continental United States, Alaska, or Hawaii, currently or previously owning or leasing a Settlement Class Vehicle originally purchased or leased in the continental United States, Alaska, or Hawaii;

and it is further

**ORDERED** that consistent with the terms of the Agreement, the following individuals and/or entities shall be excluded from the Settlement Class:

(a) all Judges who presided over the Action and their spouses; (b) all current employees, officers, directors of Defendants and their immediate family members; (c) any affiliate, parent, or subsidiary of Defendants and any entity in which Defendants have a controlling interest; (d) used car dealers; (e) anyone who purchased a Settlement Class Vehicle solely for resale; (f) anyone who purchased a Settlement Class Vehicle with a salvaged title and/or any insurance company that acquired a Settlement Class Vehicle as a result of a total loss; (g) issuers of extended vehicle warranties and service contracts; (h) any Settlement Class Member who, prior to the date of the Settlement Agreement, settled with and released Defendants or any Released Parties from any Released Claims; (i) any Settlement Class Member filing a timely and proper Request for Exclusion from the Settlement Class;

and it is further

**ORDERED** that Plaintiffs' request for the conditional appointment of Jeffrey Barr, Arnold Milstein, Allan Zaback, and Brittany Funk ("Representative Plaintiffs") as representatives of the Settlement Class is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' request for the appointment of Peter A. Muhic, Russell D. Paul, and Edwin J. Kilpela, Jr. as Settlement Class Counsel is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' request for preliminary approval of the Settlement Agreement and Release settling Plaintiffs' claims is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' request for the appointment of JND Legal Administration as Settlement Administrator is **GRANTED**. The Settlement Administrator shall submit to the jurisdiction of this Court with respect to all aspects of the Agreement and is bound to follow all terms and conditions set forth in the Agreement, including those concerning the implementation, supervision, and administration of the Notice Plan, the administration of the claims processes, and any other duties provided for in the Agreement; and it is further

**ORDERED** that Plaintiffs' request for approval of the proposed Class Notice, substantially in the form attached as Exhibits A and B to the Agreement, and the proposed Notice Plan,

substantially in the manner set forth in the Agreement, is **GRANTED**. Within seventy-five (75) days after the entry of this order, the Settlement Administrator shall establish the Settlement Website, create a toll-free number and/or email address at which the Settlement Administrator can be contacted by Settlement Class Members, and cause the Class Notice to be disseminated in the form and manner provided by the Agreement, with the understanding that prior to publication, the parties may make any non-material modifications to the Class Notice should they agree that such changes are necessary under the circumstances. The date upon which the Settlement Administrator initiates mailing pursuant to the Notice Plan shall become the "Notice Date"; and it is further

**ORDERED** that consistent with the terms of the Agreement, Settlement Class Members shall have until forty-five (45) days after the Notice Date to submit claims for reimbursement, which should be accomplished in the manner provided in the Agreement; and it is further

**ORDERED** that unredacted versions of the Motion for Preliminary Approval, the Agreement, and the exhibits thereto shall be filed on the public docket three (3) business days following the last day to submit claims for reimbursement; and it is further

**ORDERED** that any Settlement Class Member may, upon request, be excluded from the Settlement Class by submitting, either online or by mail, a Request for Exclusion that complies with the requirements set forth in the Agreement. The deadline to submit a Request for Exclusion shall be no later than sixty (60) days after the Notice Date. All persons who submit valid and timely Requests for Exclusion in the manner set forth in the Agreement will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their ability to independently pursue any claims they may have against Defendants. Should a Settlement Class Member who submits a timely claim for reimbursement thereafter file a valid and timely Request for Exclusion, the Request for Exclusion will control; and it is further

**ORDERED** that any Settlement Class Member wishing to object to the fairness of the Agreement must make a valid objection no later than sixty (60) days after the Notice Date. To be considered valid, the objection: (1) must be made in writing and include all required information set forth in the Agreement; and (2) must be submitted either by filing a statement of objection with the Court via the Court's electronic docketing system, or otherwise by mailing the objection to the Court and serving, by first-class mail, copies of the objection upon the entities listed in the Agreement. Any objections served by mail must be postmarked no less than sixty days after the Notice Date; and it is further

**ORDERED** that the Court shall conduct the Final Fairness Hearing on **April 21, 2025, at 10:00 a.m.**, in **Courtroom 3C at the Mitchell H. Cohen Building & U.S. Courthouse, 4th & Cooper Streets, Camden, New Jersey 08101**, to determine whether the proposed settlement should be approved as fair, reasonable, and adequate; whether a judgment should be entered approving the Agreement; and, separately, whether the applications by Class Counsel for attorneys' fees and for service awards to the Representative Plaintiffs should be approved. The Court reserves the right to alter the time and date of the Final Fairness Hearing without further notice to the Settlement Class Members other than that which may be posted by the Court and on the Settlement Website, but in no case will the Final Fairness Hearing occur on a date sooner than 150 days following the entry of this Order; and it is further

**ORDERED** that the motion for final approval of the Agreement and Class Counsel's application for attorneys' fees, expenses, and costs, and the application for service awards to the Representative Plaintiffs shall be filed and served no later than thirty (30) days after the Notice Date. The motion for final approval of the Agreement and Class Counsel's applications for attorney's fees, expenses, costs, and service awards to the Representative Plaintiffs shall be

considered independently from each other, and should any dispute arise that relates solely to the fees and awards sought, the Court may, upon finding that the Agreement is fair, reasonable, and adequate, enter an order approving the Agreement and reserve for a later date a decision as to the applications for fees and awards; and it is further

**ORDERED** that any Settlement Class Member who files a valid and timely statement of objection may appear, in person or by counsel, at the Final Fairness Hearing and be heard, to the extent allowed by the Court, on the matters to be considered at the hearing. Any Settlement Class member who intends to appear at the Final Fairness Hearing must file with the Clerk of the Court a notice of intention to appear at the Final Fairness Hearing and serve the notice upon all counsel designated in the Class Notice. Any notice of intention to appear must include copies of all papers, exhibits, or other evidence, and the identities of any witnesses, that the objecting party or their counsel will present to the Court in connection with the Final Fairness Hearing; and it is further

**ORDERED** that upon the timely filing of a valid objection, Class Counsel and/or counsel for Defendants may, consistent with the Federal Rules of Civil Procedure, take the deposition of the objecting Settlement Class Member and obtain any evidence relevant to the objection on an expedited schedule. Discovery requests concerning objections may be served upon the objector by e-mail. An objector's failure to make himself or herself available for deposition or comply with proper requests for discovery may result in the Court striking the objection. Should the Court determine that an objection is frivolous or made for an improper purpose, the Court reserves the right to assign the costs of discovery associated with the objection to the objecting Settlement Class Member; and it is further

**ORDERED** that any Settlement Class Member who does not make his or her objection within the time and in the manner provided for herein shall be deemed to have waived such

objection, and shall forever be foreclosed from making any objections to the fairness, reasonableness, or adequacy of the proposed settlement and the judgment approving the settlement; and it is further

      **ORDERED** that this Court retains exclusive jurisdiction to consider all further matters arising out of or connected with the Agreement; and it is further

      **ORDERED** that pending further order of the Court, all proceedings in this case are stayed pending the final approval of the Agreement, except as may be necessary to implement or comply with the terms of the Agreement, or as otherwise contemplated herein; and it is further

      **ORDERED** that in the event that the Agreement does not become final and effective for any reason, or if this Court (or an appellate court on appeal) does not grant final approval of the Agreement, the conditional certification of the Settlement Class shall be void and vacated without prejudice to any rights or defenses available to the parties to the Agreement before its execution.

                                     s/ Matthew J. Skahill
                                     MATTHEW J. SKAHILL
                                     United States Magistrate Judge