# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTINE POWELL, *et al.*, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SUBARU OF AMERICA, INC., *et al.*, <br><br> Defendants. | Case No. 1:19-CV-19114-MJS |

**DECLARATION OF SETTLEMENT CLASS COUNSEL**
**IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT**
**AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT**
**OF EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS**

We, Peter A. Muhic, Edwin J. Kilpela, Jr., Russell Paul, hereby declare as follows:

1. We were appointed Class Counsel for the Settlement pursuant to this Court's Order granting preliminary approval of the Settlement. ECF No. 155 at 2. Through that time, we served as interim class counsel pursuant to Federal Rule of Civil Procedure 23(g) and this Court's prior appointment. ECF No. 26.

2. In addition to this joint declaration, we are submitting individual declarations regarding the work and expenses incurred by our respective law firms. We have personal knowledge of the information stated within this declaration and, if necessary, we could and would competently testify to this information.

1

3. This Declaration accurately summarizes the overview of the litigation, the procedural history, the work undertaken by Plaintiffs and Class Counsel to initiate this litigation for the benefit of the Class, the substantial contingent risks in and the complexity of this litigation, the settlement negotiations and mediation and the benefits of the Settlement.

4. While managing this litigation, Class Counsel have spent a substantial amount of time investigating the issues in this action, including interviewing numerous vehicle owners about their experiences, conducting depositions and formal discovery, performing substantial research into the specifications of the Settlement Class Vehicles, reviewing testing results and warranty information, consulting with technical and warranty experts, personally attending a comprehensive vehicle inspection, thoroughly analyzing the circumstances of the alleged condition and the costs of repair, and mediating and negotiating the terms of the Settlement with Defendants over a prolonged period of time.

5. This nationwide action arose out of widespread complaints of unreasonable windshield failures in certain model Subaru vehicles. During the investigation counsel for Plaintiffs spoke with numerous vehicle owners and examined photographs and voluminous NHTSA vehicle owner questionnaires and other reports, and conducted a technical review of issues and careful analysis of relevant caselaw.

6. Thereafter, other putative Class Members were interviewed, counsel reviewed vehicle repair records, analyzed prior Technical Service Bulletins, analyzed symptoms of the alleged defect in the vehicles, reviewed Subaru owners'

and warranty manuals, researched publicly available documents, and monitored online discussions.

7. During this time, counsel continued to respond to inquiries from many putative Class Members.

8. After the Court ruled on Defendants' motion to dismiss, the Parties proceeded with substantial discovery which initially required the identification and negotiation of appropriate custodians and search terms for electronically stored information, followed by the exchange of written interrogatories and document requests to all Plaintiffs and all Defendants.

9. Among the over 16,000 documents subsequently produced were significant numbers of documents from SBR which had to be translated into English from Japanese.

10. Plaintiffs also served subpoenas upon third parties, including Safelite Group, Inc. and multiple manufacturers of automobile windshields for records concerning the manufacturing and repair of windshields, as well as a subpoena for documents and a deposition of the former President of the Subaru National Retailer Advisory Board, Wally Sommer.

11. Subaru deposed eleven Plaintiffs. Plaintiffs deposed SOA's former National Service Operations Manager and current Parts Collection Center Manager, Craig Jeffries, on multiple days, in addition to Wally Sommer.

12. In response to Plaintiffs' requests, among the thousands of documents produced by Defendants were warranty data and records of testing, including stress testing of windshields, overseen by SBR.

13. Beginning in April 2023, the Parties attended multiple in-person mediation sessions as well as telephonic meetings with Rodney Max, in conjunction with numerous additional settlement discussions among counsel regarding data and information being produced and reviewed. At all times, the settlement negotiations were at arm's length and often spirited.

14. During the course of settlement negotiations, the Parties exchanged confidential engineering/testing information subject to the Confidentiality Order regarding the design of the subject windshields in the Settlement Class Vehicles and Subaru's investigation of product improvements. Plaintiffs conferred with expert consultants regarding the information received.

15. The Parties continued their negotiations over the course of many months, exchanging additional information related to the windshield investigation, including warranty and testing data. Based on the formal and informal discovery exchanged, Class Counsel gained a thorough understanding of the strengths and weaknesses of Plaintiffs' claims and were able to analyze the risks of future litigation in comparison to the relief offered by the Settlement.

16. All the terms of the Settlement Agreement are the result of extensive, adversarial, and arm's-length negotiations between experienced counsel for both sides. The Settlement is set forth in complete and final form in the Settlement Agreement.

17. On November 3, 2023, the Parties advised the Court that they had reached an agreement in principle as to all material terms of the Settlement. The

Parties did not discuss Representative Plaintiff service awards and Plaintiffs attorneys' fees until all substantive terms of the Settlement had been agreed to.

18. Defendants had informed Class Counsel that the number of Settlement Class Vehicles was approximately 1.4 million, which was accurate. The precise total of Settlement Class Vehicles is 1,460,035.

19. Due to the complexity of the Settlement, and to ensure the fairness of all aspects of the Settlement claims process, the Parties expended considerable resources and efforts over the ensuing months confirming certain data and technical issues concerning the windshields and the Class Vehicles, and drafting appropriate language for the Settlement Agreement and Notice, as well as working with the proposed Settlement Administrator and Subaru to insure the Settlement could be properly, fairly and timely implemented.

20. The first component of the settlement is the Settlement Extended Warranty, which will extend the New Vehicle Limited Warranty to cover Qualifying Cracks in Settlement Class Vehicles for a period of eight years or 100,000 miles, whichever occurs first, from the In-Service Date of the Settlement Class Vehicle. This Settlement Extended Warranty provides a one-time replacement of a pre-countermeasure windshield with a post-countermeasure windshield, at which time the Settlement Extended Warranty shall expire. The Settlement Extended Warranty is transferable among owners/lessees during its coverage period.

21. The Settlement Extended Warranty will cover 100% of all parts and labor costs associated with the replacement of the windshield due to a Qualifying Crack and includes recalibration of the Eyesight® driver assistance system.

5

22. This is a savings of over $1,100 on average, per person, who gets a replacement windshield under the warranty. This relief directly addresses the alleged defect and claims asserted in this case. In the course of negotiating the Settlement, Class Counsel consulted with a valuation expert who estimated the value of this extended warranty relief to be a minimum of $52.6 million, and depending on the actual claim scenario, could easily exceed $100 million or more.

23. The Parties recognized that the integrity of certain aspects of the claims process in this Action are susceptible to potential abuse or fraudulent claims and therefore have taken steps to ensure that Settlement Class members receive reimbursement for expenses associated with Qualifying Cracks but not for damage that is not reasonably associated with the alleged defect in the windshields. Accordingly, certain portions of the Settlement Agreement and the Declaration of John Gray, identifying the precise nature and physical description of the Qualifying Crack were redacted from the public docket.

24. Pursuant to the terms of the Settlement Agreement, the complete unredacted version of the Settlement Agreement and Gray Decl. will be filed on the public docket three (3) business days following the deadline for submitting Claims and Claim Forms. Any Settlement Class Member who submits a Claim prior to the unredacted version of the Settlement Agreement being filed on the public docket may thereafter submit a Request for Exclusion prior to the deadline for such submissions, and such Request for Exclusion will take priority. Ex. 1, § E. 3.

25. Under Tier 1, claimants who provide Proof of Repair Expense and a photograph of the windshield before a repair was performed which shows that their

windshield experienced a Qualifying Crack will be entitled to substantial monetary recovery, which is intended to reimburse the Claimants not only for their out-of-pocket losses, but also for the inconveniences they suffered in having to repair or replace their windshield on one or more occasions. There is no limit on the total amount of the Tier 1 claims to be paid by Subaru.

26.     Under Tier 2, Claimants who do not have photographic proof of the damage suffered to their windshields still have the ability to obtain a significant monetary recovery upon completing a Claims Form Photo Questionnaire. This was an extensively negotiated and carefully crafted procedure which necessarily has to balance the ability of a claimant to submit proof of a Qualifying Crack against Subaru's interest in paying for Qualifying Cracks but not for damage that resulted from impacts that would have cracked the windshields regardless of any alleged defect. Claimants with Proof of Repair Expense but no contemporaneous photograph are able to submit their claim via the Settlement Website where they are asked to select a photograph from an array of six photographs that most closely resembles the damage they experienced with their windshield. Six photographs, drawn from a pool of photographs carefully curated by the Parties that show damaged windshields caused either by residual stress (*i.e.*, a Qualifying Crack) or by substantial impact from an object, are randomly displayed on the Settlement Website when the Claim is being submitted. Claimants who select a photograph depicting a Qualifying Crack are entitled to recover 100% of the actual cost incurred for that repair.

27.     The total payment for Tier 2 claims is subject to a conditional $2 million limit ("Tier 2 Collar"). Based on historical claims and warranty data maintained by

7

Subaru, the Parties believe that the total value of Tier 2 claims will be below $2 million. Should the sum of Tier 2 claims exceed $2 Million, claims will be reduced on a pro-rata basis, but will not be reduced below 25%, regardless of the number of Tier 2 claims.

28. Claimants who do not meet the requirements of Tier 1 or Tier 2 will not be eligible for reimbursement of past expenses, but they will remain entitled to the benefits of the Extended Warranty going forward.

29. The Court provisionally appointed JND as the Settlement Administrator. Class Counsel has worked closely with Defendants and JND to ensure timely and proper implementation of the Notice Plan, to respond to inquiries from Settlement Class Members, and prepare submissions for final approval of the Settlement.

30. The details of the notice plan and how it was implemented are contained in the declaration from Marcia Uhrig, which is attached as an exhibit to Plaintiffs' unopposed motion for fees and costs.

31. Pursuant to 28 U.S.C. § 1715, the Class Action Fairness Act of 2005, JND also provided notice to the U.S. Attorney General and the applicable State Attorneys General ("CAFA Notice") after the motion for preliminary approval of the Settlement was filed so that they could review the proposed Settlement and raise any comments or concerns. ECF 148, at §I, ¶ 1(a).

32. On August 19, 2024, the Offices of the Attorneys General for several states jointly contacted Class Counsel and counsel for Subaru asking to participate in a call to discuss the background of the case, the terms of the Settlement, the

structure of the proposed Settlement Class, the claims process, and why counsel believed the Settlement was in the best interest of the proposed Class.

33. On August 19, 2024, Class Counsel and counsel for Subaru participated in a conference call to discuss the above topics. On September 4, 2024, the same counsel for the Parties responded to a follow-up email from the AGs' offices requesting additional background on the extended warranty coverage.

34. The Class Representatives' interests are all aligned with those of the Settlement Class. The experiences of the Class Representatives are described below:

- Plaintiff/Class Representative Jeffrey Barr is a citizen of New Jersey. In November 2018, he leased a new 2019 Subaru Forester in New Jersey. In September 2019, Plaintiff Barr alleges his windshield "suddenly and inexplicably cracked" as he drove on the highway with his wife. ECF No. 69. As a result, he incurred out of pocket losses of $500 for the replacement of the windshield. In addition to providing information to aid in the drafting of the complaint and responding to discovery, on August 11, 2022, Plaintiff Barr was deposed by Defendants.

- Plaintiff/Class Representative Allan Zaback is a citizen of Delaware. Plaintiff Zaback purchased a 2019 Subaru Forester. According to Plaintiff Zaback, his windshield and a replacement windshield cracked for unknown reasons, causing him to incur hundreds of dollars in losses for replacement windshields. ECF No. 69. In addition to providing information to aid in the drafting of the complaint and responding to

9

discovery, on November 2, 2022, Plaintiff Zaback was deposed by Defendants.

- Plaintiff/Class Representative Arnold Milstein is a citizen of Florida. In September 2019, he purchased a new Subaru Outback in Florida. In October 2019, Plaintiff Milstein noticed a crack running through his windshield. According to Milstein, he was not aware of any incident that could have caused this damage. ECF No. 69. In addition to providing information to aid in the drafting of the complaint and responding to discovery, on August 18, 2022, Plaintiff Milstein was deposed by Defendants.

- Plaintiff/Class Representative Brittany Funk is a citizen of Indiana. In June 2019, she purchased a 2019 Subaru Forester. Plaintiff Funk alleges that when her car had 14,000 miles on it, her windshield cracked for unknown reasons, and caused her to incur $500 in out-of-pocket losses. *See* ECF 69. In addition to providing information to aid in the drafting of the complaint and responding to discovery, on October 24, 2022, Plaintiff Funk was deposed by Defendants.

35. The Class Representatives all remained informed and cooperated with counsel in the conduct of the litigation, they all assisted in responding to written discovery requests and in producing documents, they were all deposed, they all remained in contact with counsel during the course of settlement discussions and they all have approved the terms of the Settlement. Each Class Representative were

advised of, and approved of, Class Counsel's fee structure in the case at the time they retained Class Counsel.

36. Once the substantive terms of the Settlement, the Parties continued working with Mr. Max to come to an agreement regarding attorneys' fees and costs. The Parties ultimately accepted a mediator's proposal of $7,250,000.00 ("seven million, two hundred fifty thousand dollars") inclusive of all fees and costs. In addition to settling the fee and cost issue, the Parties agreed that Subaru would not oppose Plaintiffs' request for service awards of $5,000 to each of the named Plaintiffs. The payment of these fees, costs, and incentive awards will not reduce or otherwise have any effect on the benefits the Settlement Class Members receive under the Settlement. These proposed fee and expense award, as well as the incentive awards, were included in the short-form and long-form notices, and described in the FAQs on the Settlement Website. To date, no objections have been filed by anyone based on the amount of attorneys' fees and expenses or service awards.

37. During the course of this litigation, attorneys at our firms, and at firms of co-counsel working at our direction and under our supervision have devoted 6083.5 hours, with a lodestar value of $4,689,076.25 to the successful prosecution of this matter on behalf of the Settlement Class. As further described in each of our individual declarations regarding the work and expenses incurred by our respective law firms, our rates are entirely consistent with the rates approved in other cases.

38. Additionally, our firms, and the other firms involved in this litigation, have advanced $48,731.97 in expenses and costs.

39. The hours and expenses incurred by each firm are detailed and explained in the contemporaneously filed declarations.

40. In addition, the firms of Levin Sedran & Berman, LLP, Moon Law APC, and Migliaccio & Rathod LLP contributed valuable work to the case at the direction of Class Counsel. These firms incurred the following expenses: Levin, $1,333.48; Moon, $7,875.93; Migliaccio, $598.27.

41. In addition to the hours already expended, Class Counsel estimates they will spend at least 250 additional hours supervising the ongoing administration of the Settlement claims process, responding to class member inquiries, providing supplemental updates to this Court and preparing for and appearing at the upcoming hearing regarding final approval of the Settlement, as well as responding to additional inquiries from Class Members and working with JND and counsel for Defendants in regard to any administration issues that might arise after the Effective Date.

42. Based on our experience, the Settlement provides exceptional relief to the Settlement Class Members. The Settlement is eminently fair, reasonable, and adequate and treats all Settlement Class Members equitably.

43. We respectfully ask this Court to approve the request for the payment of fees and reimbursement of expenses and costs.

We declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.

Dated: January 16, 2025                         By:/s/*Peter A. Muhic*
                                                                    Peter A. Muhic

                                                                                  _____
Edwin J. Kilpela, Jr.

/s/ *Russell D. Paul*
Russell D. Paul

13